Law Offices of Peter L. Fear
Peter L. Fear, No. 207238
Gabriel J. Waddell, No. 256289
7750 North Fresno Street, Suite 101
Fresno, California 93720
(559) 436-6575
(559) 436-6580 (fax)
pfear@fearlaw.com

Attorneys for Debtor in possession

FILED
September 10, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002080168

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>ST JAMES AND ENNIS HANFORD INVESTMENT, LLC,<br>a LIMITED LIABILITY COMPANY,<br><br>Debtor in possession. | Case No. 09-17500-A-11<br><br>Chapter 11<br><br>D.C. No. PLF-3<br><br>Date: September 30, 2009<br>Time: 1:30 p.m.<br>Place: Dept. A, Ctrm. 11, 5th Floor<br>United States Courthouse<br>2500 Tulare St., Fresno, California<br>Judge: Hon. Whitney Rimel |

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

TO THE HONORABLE WHITNEY RIMEL, JUDGE OF THE UNITED STATES BANKRUPTCY COURT:

ST JAMES AND ENNIS HANFORD INVESTMENT, LLC, A LIMITED LIABILITY COMPANY, Debtor and Debtor-in-possession herein (hereinafter "Debtor"), hereby moves this Court seeking an Order approving the use of cash collateral as follows:

## Summary of Relief Requested

The grounds for this Motion are that the cash collateral sought to be used constitutes proceeds of farming done on Debtor's property and a bank account in which Creditor Citizens Business Bank ("Secured Creditor") has a security interest. This is a single asset real estate case. Debtor primary asset is approximately 300 acres of farmland (the "Property") which Debtor was in the process of developing. Debtor is seeking permission to use the cash collateral to pay for engineering services to obtain a tentative map on the Property so that Debtor can sell off developable phases the Property. Debtor anticipates this will result in a much higher return to Secured Creditor and creditors of the estate than if the Property were sold as-is in its current condition.

Debtor is seeking authority to use $160,000 to pay for engineering services necessary to get the Property entitled.

Pursuant to Bankruptcy Rule 4001(d)(1), this Motion has been served by mail on all creditors claiming an interest in cash collateral, all secured creditors, the 20 largest unsecured creditors, the Debtor, the taxing agencies required by LBR 2002-1, the U.S. Trustee's Office, and any and all person who have requested special notice by filing the appropriate documents with the Bankruptcy Court.

The Motion is based upon the Notice of Motion and Declarations of James L. Clark, Jr. and John A Zumwalt, the files, pleadings and orders on file on this Chapter 11 case, such other and further evidence as may properly come before the court, and the following points and authorities:

## Statement of Facts

1. Debtor is a California Limited Liability Company and the primary asset of Debtor is approximately 300 acres of farmland outside of Hanford, California (the "Property"). Debtor originally intended to develop the Property. At this point, Debtor intends to complete the entitlement process and sell off certain phases or "pods" of the project to pay the claim of Secured Creditor. If the sale of those phases is insufficient to pay Secured Creditor in full, Debtor will then refinance the remaining the balance and develop the Property as Debtor is able to do so.

2. The affected secured creditor is Citizens Business Bank ("Secured Creditor") which has security interests in the Property, proceeds of the Property, including most of the funds in the DIP Bank Account with an approximate balance of $110,000, and a bank account at Citizen's Business Bank holding approximately $280,000.

3. Secured Creditor is owed approximately $20,000,000 in total.

4. Some engineering work has been done on the Property. A significant amount remains to be done. Following are the items that have already been completed:

    a. The City of Hanford certified the Environmental Impact Report on January 6, 2009.

    b. The City of Hanford approved a general plan amendment, and Planned Unit Development on January 6, 2009, and approved the pre-zoning of the Property on January 20, 2009 subject to annexation to the City. Zoning of the subject property will be official upon finalization of annexation.

    c. The City of Hanford approved the Planned Unit Development application on January 20, 2009.

      d. LAFCO approved Villagio (the project name) for annexation to the City of Hanford on March 25, 2009, and the U.S. Department of Justice has reviewed the annexation application and issued a pre-approval notice.

5. LAFCO approval of the annexation is good for one year, after which it expires. Debtor can apply for time extensions, but there is no guarantee that it would be extended. Thus, the annexation must be approved before March, 2010, or all of the work done so far on the project will expire. Mr. Zumwalt estimates that if he is able to begin work immediately on the project that the annexation can be finalized by the end of 2009.

6. The next step is to file a tentative map. Debtor intends to file a tentative map as the first step in creating separate parcels for each of the 27 "pods" or "phases." In order to be able to obtain city approval of the tentative map creating these parcels, the following steps will need to be done:

      a. Create homeowner's association documents to address common areas in each phase and throughout the project, including maintenance of streets, landscaping parks and lighting;

      b. Prepare documents for a landscape and lighting maintenance district and a street maintenance district to take care of the costs for landscaping and lighting and street maintenance;

      c. Prepare a master grading plan for the entire project;

      d. Prepare a master infrastructure plan for water, sewer and storm drain;

      e. Prepare a development matrix which will allocate responsibility for various obligations between the different Parcels; and

       f.   Prepare a development agreement between the city and property owner which defines all responsibilities and extends the expiration date of the tentative map to a later date (12-20 years).

7. Debtor estimates that it will take approximate six (6) to nine (9) months to complete these steps. That will complete the entitlement process.

8. Debtor intends to propose a plan to sell off some of the 27 pods or phases to pay the amount owed to Secured Creditor. Debtor will either sell enough of the individual pods/phases to pay the full amount owed to Secured Creditor, or as is more likely, Debtor will pay down the debt to Secured Creditor to a point at which Debtor will be able to refinance the remaining balance to Secured Creditor. Debtor anticipates that the value of the pods sold separately will be substantially more than Debtor could obtain for the Property as-is.

9. The Secured Creditor's appraisal as of August 29, 2008, values the Property at $22,650,000 as-is and $27,000,000 at completion of annexation, zoning and tentative map. Currently, the Property is comprised of two parcels and it could not be sold as anything smaller than two parcels until the tentative map is obtained. Debtor believes that it will be worth substantially more once the final map is obtained.

10. John Zumwalt of Zumwalt - Hansen, Inc. is the engineer for this project. He has been involved in the vast majority of development done in and around Hanford, California for the last 37 years and Debtor would like Mr. Zumwalt to finish his work on the project. However, Mr. Zumwalt is currently owed approximately $47,000 on this project and he is not willing to continue work on the project unless payment of his post-petition fees is guaranteed. He estimates that it will cost approximately $160,000 to finish the entitlement

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - 5

process. This figure does include some allowance for city fees and some other fees that will have to be incurred as part of the development process, but does not include payment of property taxes that will be necessary to sell off individual pods/phases.

11. Mr. Zumwalt was at first hesitant to work on the project before he had been paid the amount he was owed pre-petition. However, he has indicated that he would be willing to do the remaining work necessary if he was given the $160,000 as a retainer in his trust account, so that he would be guaranteed payment for his post-petition services and if some arrangement can be made so that he is paid for his pre-petition work from the sale of the phases of the project.

12. Consequently, Debtor is proposing that the $110,000 in Debtor's DIP account be placed into Mr. Zumwalt's trust account, along with $50,000, from the account at Citizens Business Bank, so that Mr. Zumwalt can immediately begin work on the remaining items so that the Property can be entitled in a timely fashion.

13. Debtor has been unable to obtain financing with unsecured credit pursuant to Bankruptcy Code Section 364(a) or (b) allowed as an administrative expense under Bankruptcy Code Sections 503(b)(1), or secured credit pursuant to Bankruptcy Code Section 364(c), or on more favorable terms from any other sources.

14. Debtor requests that the Court authorize use of cash collateral to pay the expenses described herein.

15. Debtor alleges that the requested use of cash collateral is for and in the best interests of the estate.

## Discussion

16. As the Debtor in Possession, the Debtor's use of property in the Chapter 11 bankruptcy estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in relevant part:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

17. Section 363(c)(2) establishes a special requirement, however, for the use of cash collateral. Cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest…" 11 U.S.C. § 363(a). Section 363(c)(2) permits the use of cash collateral under subsection (c)(1) only if one of two alternative circumstances exist:

> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

In accordance with Rule 4001(d)(1), the Debtor has served the Motion on all creditors claiming an interest in cash collateral, all secured creditors, the 20 largest unsecured creditors, the Debtor, the taxing agencies to the extent required by LBR 2002-1, the U.S. Trustee's Office, and any and all person who have requested special notice by filing the appropriate documents with the Bankruptcy Court. Under the circumstances, it is submitted that the notice with respect to this Motion is proper, and the court should approve the requested use of cash collateral.

## Conclusion

WHEREFORE, the Debtor respectfully requests the entry of an order: (i) authorizing the use of cash collateral on terms prescribed by the Court, and (ii) granting such other and further relief as this court deems just and proper.

Date: 9/9/09

LAW OFFICES OF PETER L. FEAR
By: /s/ Peter L. Fear
Peter L. Fear